**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ZACHARIAH SHEEHAN and EDWARD CARVALHO, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | Civil Action No. _____ |
| Plaintiffs, | ) ) | |
| v. | ) ) | **JURY DEMANDED** |
| RCN TELECOM SERVICES, INC. and RCN TELECOM SERVICES OF MASSACHUSETTS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

**I.     INTRODUCTION**

1. This is a collective action brought under the FLSA on behalf of telecommunications installation technicians who perform installation services in residences and businesses for RCN Telecom Services, Inc. and RCN Telecom Services of Massachusetts, LLC (collectively "RCN" or "Defendants") in Massachusetts and who are classified as independent contractors. RCN contracts with various intermediaries in Massachusetts who provide telecommunication installation services solely for RCN. In order to work for RCN, the technicians are required to sign up with one of these companies in order to provide services for RCN; however, RCN controls every aspect of how these technicians perform their services. The technicians who perform these services, on whose behalf this class action is brought, are improperly classified as independent contractors, are in fact employees or joint employees of RCN, and are thus denied the protections of the Fair Labor Standards Act.

2. The Plaintiffs bring claims on behalf of a class of similarly situated telecommunications installation technicians who have worked as independent contractors for RCN in Massachusetts who may opt in to this case under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  RCN has violated the FLSA by failing to pay these individuals time-and-a-half their regular rate for hours worked in excess of 40 a week.

**II.     PARTIES**

3. Plaintiff Zach Sheehan is an adult resident of Providence, Rhode Island.  Zach Sheehan has worked as a telecommunications installation technician for Defendants from August 2014 to March 2015.

4**.** Plaintiff Edward Carvalho is an adult resident of Seekonk, Massachusetts.  Edward Carvalho has worked as a telecommunications installation technician for Defendants from December 2014 to November 2015.

5. The named Plaintiffs bring this action on behalf of themselves and others similarly situated, including all individuals who may choose to opt in to this action, including all individuals in Massachusetts who may wish to opt in to this action who have worked as telecommunications installation technicians for Defendants, who were classified as independent contractors, and who were thus denied pay for hours worked in excess of 40 a week.  Similarly situated individuals may choose to opt in to this action to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

6. Defendant RCN Telecom Services, Inc. is a company having its principal place of business in Herndon, Virginia, which provides telecommunications services to businesses and individuals throughout the United States.

7. Defendant RCN Telecom Services of Massachusetts, LLC is a company having its principal place of business in Princeton, New Jersey, which provides telecommunications services to businesses and individuals in Massachusetts.

## III. JURISDICTION AND VENUE

8. This court has general federal question jurisdiction pursuant to 28 U.S.C. §1331, because plaintiffs have brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.

9. Venue is proper in this court because Defendants have employed Plaintiffs in Massachusetts and have violated the law in Massachusetts, and have specifically chosen to maintain a corporate presence within, and substantial contacts with, the Commonwealth of Massachusetts.

## IV. STATEMENT OF FACTS

**Plaintiff Zach Sheehan**

10. Plaintiff Zach Sheehan ("Sheehan") worked for RCN as a telecommunications installation technician from August 2014 to March 2015. In order to work for RCN, he had to sign up with a small intermediary company, which performed work exclusively for RCN.

11. Sheehan was classified as an independent contractor.

12. RCN assigned Sheehan an identification number and assigned him jobs every day through an RCN smartphone application. Sheehan used this application to "check in" to each job assignment and "check out" once he completed the job. Through this application, RCN specified

the equipment which Sheehan needed to complete each job, the types of services to be performed, and the location for each job assignment.

13. Sheehan also received an RCN logo uniform, including a shirt and a hat. Sheehan's uniform marked him as an "independent contractor." He also had to place RCN decals on the van he used to travel to his job sites.

14. Every morning, Sheehan was required to report to the RCN warehouse in Arlington, Massachusetts, in order to pick up the equipment he needed for the day's assignments and to check in with an RCN employee.

15. In addition, Sheehan was required to attend an unpaid RCN training prior to beginning his job, and to attend RCN meetings, hosted by RCN supervisors at the Arlington warehouse, once a month.

16. After picking up the equipment as specified by RCN, Sheehan went about his assigned jobs for the day. These included (1) installing cable television service; (2) installing broadband internet service; (3) installing telephone service; (4) removing cable, internet, or telephone service from businesses or residences when customers have failed to pay RCN for these services; and (5) picking up RCN equipment from RCN customers who have either cancelled their service or failed to pay for services. Sheehan performed these services in the greater Boston area.

17. Each job assignment Sheehan received from RCN had an associated timeframe. If Sheehan did not complete the assignment within that timeframe, he would have money taken out of his pay.

18. In addition to the jobs he was assigned every morning, Sheehan sometimes received additional assignments from RCN during the day, either through the RCN smartphone

application or through a phone call from an RCN dispatcher. If Sheehan declined these additional assignments, he could be suspended or terminated.

19. The RCN customers for which Sheehan performed services paid RCN directly for these services. Sheehan could not bargain with the customers over the pay he received for each service.

20. Sheehan was paid based on a point system, in which he received a certain amount of pay for each service he performed.

21. Although Sheehan regularly worked in excess of 40 hours a week, and worked more than 80 hours in several weeks, he was never paid time-and-a-half for hours worked in excess of 40 a week. Sheehan typically worked 7 days a week, and worked as many as 12 hours a day.

**Plaintiff Edward Carvalho**

22. Plaintiff Edward Carvalho ("Carvalho") worked for RCN as a telecommunications installation technician from December 2014 to November 2015. In order to work for RCN, he had to sign up with a small intermediary company, which performed work exclusively for RCN. Carvalho was classified as an independent contractor.

23. RCN assigned Carvalho an identification number and assigned him jobs every day through an RCN smartphone application. Carvalho used this application to "check in" to each job assignment and "check out" once he completed the job. Through this application, RCN specified the equipment which Carvalho needed to complete each job, the types of services to be performed, and the location for each job assignment.

24. In addition, Carvalho received a uniform from RCN, including a logo shirt and a hat. He also had to place RCN decals on the van he used to go to his job assignments.

25. Every morning, Carvalho was required to report to the RCN warehouse in Arlington, MA in order to pick up the equipment he needed for the day's assignments and to check in with an RCN employee.

26. Carvalho was also sometimes required to pick up equipment for some of his job assignments from an RCN warehouse in South Boston.

27. In addition, Carvalho was required to attend an unpaid training directed by RCN employees prior to beginning his job, and to attend RCN meetings, hosted by RCN supervisors at the Arlington warehouse, every month.

28. After picking up the equipment as specified by RCN, Carvalho traveled to his assigned jobs for the day. These included (1) installing cable television service; (2) installing broadband internet service; (3) installing telephone service; (4) removing cable, internet, or telephone service from businesses or residences when customers have failed to pay RCN for these services; and (5) picking up RCN equipment from RCN customers who have either cancelled their service or failed to pay for services. Carvalho performed these services in the greater Boston area.

29. Each job assignment Carvalho received had an associated timeframe. If he did not complete the assignment within that timeframe, RCN would impose a penalty on him, and he would have money taken out of his paycheck.

30. During the day, Carvalho sometimes received additional jobs form RCN, either through the RCN smartphone application or through a phone call from an RCN dispatcher. If Carvalho did not perform these additional assignments, he could be suspended or terminated.

31. The RCN customers for which Carvalho performed services paid RCN directly for these services. Carvalho could not bargain with the customers over the pay he received for each service.

32. Carvalho was paid based on a point system, in which he received a certain amount of pay for each service he performed.

33. Carvalho regularly worked in excess of 40 hours a week; however, he was never paid time-and-a-half for hours worked in excess of 40 a week. Carvalho worked 7 days a week, and worked as many as 12 hours a day.

**<u>Class Allegations</u>**

34. Defendants RCN Telecom Services, Inc. and RCN Telecom Services of Massachusetts, LLC engage telecommunications installation technicians like Plaintiffs to perform installation services in Massachusetts. These technicians must work through one of several small intermediary companies in order to perform work for RCN. These technicians are classified as "independent contractors" and wear uniforms, provided by RCN, which mark them as "independent contractors." Although these technicians are formally retained and paid by small intermediary companies, Defendants closely direct the manner in which the technicians perform their jobs day to day, and have the power to discipline and terminate them.

35. While the Defendants classify these technicians as "independent contractors," the nature of the services they perform and the manner in which they perform these services, make it clear that they are actually employees. The Defendants are in complete control of the manner in which independent contractors like Plaintiffs perform their services.

36. The "independent contractors" perform services (installation of telecommunication services) which is within the usual course of business of the Defendants (the sale and installation of telecommunication services).  In fact, Defendants also hire other individuals who perform the exact same services as these "independent contractors" but who are classified as employees.

37. These "independent contractors" are entirely dependent on the Defendants for their business, as they may only install telecommunications services for customers of RCN.

38. RCN assigns each "independent contractor" an identification number.  The "independent contractors" use an RCN smartphone application to view the jobs assigned to them by Defendants; the also use the application to "check in" to a job and to "check out" once they have completed a job.  Each job has an assigned timeframe.

39. Prior to beginning work for RCN, the "independent contractors" undergo unpaid training, mandated by RCN, in which they are instructed on how to perform their jobs.

40. Each morning, the "independent contractors" hired by Defendants are required to report to a warehouse owned and operated by Defendants.  They must report to the warehouse by a certain time, and "check in" with an RCN employee.  In addition, approximately once a month, technicians are required to attend a meeting with RCN employees, typically held at an RCN warehouse.

41. At the warehouse, the "independent contractors" pick up RCN equipment, as specified in their job assignments.

42. In accordance with their job assignments, the "independent contractors" go to residences and businesses who have contracted with RCN for telecommunications services.  They provide various services such as (1) installing cable television service; (2) installing

broadband internet service; (3) installing telephone service; (4) removing cable, internet, or telephone service from businesses or residences when customers have failed to pay RCN for these services; and (5) picking up RCN equipment from RCN customers who have either cancelled their service or failed to pay for services.

43. In addition to the job assignments they receive each morning, the "independent contractors" also occasionally receive calls from an RCN dispatcher to perform additional jobs or additional job assignments through the RCN smartphone applications. If they decline to perform one of these additional jobs, the "independent contractors" can be suspended or terminated by RCN.

44. On information and belief, the RCN customers at whose homes and businesses these "independent contractors" perform their services pay RCN directly for all of these services. The "independent contractors" cannot and do not negotiate with these customers regarding the services provided or the payment for these services.

45. The "independent contractors" only install equipment provided by RCN. The "independent contractors" also wear logo apparel, including shirts and hats, provided by RCN, and place RCN decals on the vehicles they use to drive to job sites.

46. RCN supervisors can and do discipline and terminate "independent contractors" such as Plaintiffs when they are not satisfied with the manner in which a job is performed. For example, technicians face pay deductions for arriving to a job late; technicians can be suspended or terminated for failing to take on an additional job, or for performing a job unsatisfactorily.

47. The "independent contractors" are paid based on a "point system," or a piece rate, which assigns a certain number of points, with a corresponding dollar value, to each service performed.

48. The "independent contractors," including Plaintiffs, regularly work more than 40 hours a week providing services for Defendants. The "independent contractors" typically work 7 days a week, and work up to 12 hours a day. However, the "independent contractors" are never paid time-and-a half their regular rate of pay for hours worked in excess of 40 a week.

49. The vehicles used by the "independent contractors" in performing services for Defendants all weigh less than 10,000 pounds.

## COUNT I
## (VIOLATION OF FAIR LABOR STANDARDS ACT ("FLSA"))

Defendants failed to ensure that telecommunications installation technicians improperly classified as "independent contractors" were paid time and a half for overtime for hours worked in excess of 40 in a week. Defendants' actions constitute a knowing and willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*.

**WHEREFORE** Plaintiffs request that the court enter the following relief:

1. Permission for individuals who perform telecommunication installation services for RCN in Massachusetts, are classified as independent contractors, and have not been paid overtime for hours worked in excess of forty (40) a week, to opt in to this cation pursuant to § 216(b) of the FLSA;
2. All damages to which the named Plaintiffs and class members may be entitled;
3. Liquidated damages;
4. Attorneys' fees and costs; and

5. Any other relief to which the Plaintiffs may be entitled.

## JURY DEMAND

Plaintiffs request a trial by jury on all their claims.

Respectfully submitted,

ZACHARIAH SHEEHAN AND EDWARD CARVALHO, on behalf of themselves and all others similarly situated,

By their attorneys,

    /s/Harold Lichten
Harold L. Lichten, BBO #549689
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com

Date: March 11, 2016